AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
CELLULAR TELEPHONE ASSIGNED ) Case No. 3:18 mj 221
CALL NUMBER 502-851-0030 )
)

FILED
RICHARD W. NAGEL
CLERK OF COURT
2018 MAR 22 AM 9:58
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 843(b) | use of telephone communication facility |

The application is based on these facts:

See Attached Affidavit of Robert Buzzard

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert M. Buzzard*
Applicant's signature

Robert Buzzard, Special Agent of the FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 3-22-18

*Sharon L. Ovington*
Judge's signature

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **502-851-0030** | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Robert M. Buzzard, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **502-851-0030, (the "Target Cellular Device")**, whose service provider is **Sprint**, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251. The Target Cellular Device is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since January 27, 2002. I have been involved in narcotics related arrests; the execution of search warrants, which resulted in the seizure of narcotics; and supervised the activities of informants who provided information and assistance resulting in drug buys. Since 2002, I received training and experience in interviewing and interrogation techniques; arrest, search and seizure procedures; narcotics investigations; and various other criminal investigations resulting in successful prosecution. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and

the organization of drug conspiracies. In the course of conducting narcotics investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting undercover operations; consensual monitoring and recording of both telephonic and nontelephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized wire and oral interception electronic surveillance; and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity. I have repeatedly encountered a practice wherein drug traffickers distribute a cellular telephone number to their drug customers, often described by traffickers as a "money phone." The money phone is used primarily to communicate with those customers. The customers will subsequently call or send a text message to the trafficker on that cellular telephone number to arrange a purchase of drugs as needed. The trafficker will many times field calls or text messages from several customers at once, and then direct all those customers to travel in their car to a designated meeting point. Once all the customers have driven to the designated place, the drug trafficker will appear in his vehicle, quickly conduct hand to hand drug transactions with each customer, and then drive away. I have also encountered the practice of traffickers fielding calls from drug customers and directing those customers to "drug houses" which are used to store, package, and sell narcotics.

     3.      Your Affiant also knows through training and experience that drug traffickers are oftentimes "fronted" narcotics from their supplier. Once the drug trafficker sells the narcotics, he/she is expected to pay their supplier for the "fronted" narcotics.

     4.      The facts in this affidavit come from my personal observations, my training and experience and information obtained from other FBI Special Agents/Task Force Officers in the

Northern District of Ohio. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by an unknown Hispanic male person (U.P.) utilizing the Target Cellular Device, and others unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of the U.P. and individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. On or about March 7, 2018, your Affiant gained the cooperation of a drug trafficker previously operating in the Dayton, Ohio area. The cooperator, hereinafter referred to as Cooperating Witness One (CW1), is providing information to Affiant in exchange for consideration in an ongoing narcotics investigation. CW1 reported she/he had previous contact with a Hispanic male in the Lexington, Kentucky area who was selling kilogram quantities of cocaine and crystal methamphetamine. CW1 provided a cellular telephone number (504-915-9074) for the Hispanic male supplier (U.P.) but did not know the supplier's name or true identity.

7. Beginning on or about March 13, 2018, CW1 began contacting U.P. at cellular telephone number 504-915-9074 to arrange a meeting in Lexington, Kentucky to discuss future drug transactions. U.P. agreed to meet CW1 on or about March 18, 2018 in Lexington, Kentucky.

8. Under direct supervision and surveillance by Affiant and FBI task force members, CW1 and U.P. met in Lexington, Kentucky. During the meeting, U.P. offered to sell CW1 kilogram quantities of cocaine for $30,000 per kilogram and pounds of crystal methamphetamine (ice) for $7,000 per pound. The U.P. also directed a second unknown Hispanic male courier to

3

obtain a sample of cocaine and a sample of crystal methamphetamine for CW1. The two samples were delivered to CW1 and seized by Affiant as evidence.

9. Also during the meet, the U.P. requested CW1 obtain a new cell phone number to communicate with U.P. exclusively when arranging future drug transactions. U.P. also obtained new cell phone number 502-851-0030 (Target Cellular Device) to communicate with CW1.

10. FBI task force members were unsuccessful in identifying the U.P. during the surveilled meeting on March 18, 2018. Task Force members noted the U.P. was driving a vehicle registered to a car lot and not an identifiable person during the meet.

11. Beginning on or about March 20, 2018, CW1 began communicating with the U.P. at the Target Cellular Device to discuss and arrange for future drug transactions.

12. Your Affiant knows that obtaining location information on the Target Cellular Device will assist investigators in identifying a residence(s) frequented by the U.P. as well as drug stash houses used by the U.P. and other drug trafficking associates.

13. In my training and experience, I have learned that **Sprint** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some

4

cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

14. Based on my training and experience, I know that **Sprint** can collect E-911 Phase II data about the location of the Target Cellular Device, by initiating a signal to determine the location of the Target Cellular Device on **Sprint's** network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know that **Sprint** can collect cell-site data about the Target Cellular Device.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the

proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

18. I further request that the Court direct **Sprint** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **Sprint**. I also request that the Court direct **Sprint** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Sprint's** services, including by initiating a signal to determine the location of the Target Cellular Device on **Sprint's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/Robert M. Buzzard
Robert M. Buzzard
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on March 22, 2018.

SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

7

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **502-851-0030,** (the **"Target Cellular Device"**), whose wireless service provider is **Sprint,** a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

2. Information about the location of the Target Cellular Device that is within the possession, custody, or control of **Sprint** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cellular Device described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cellular Device" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **Sprint, Sprint** is required to disclose the Location Information to the government. In addition, **Sprint** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **Sprint's** services, including by initiating a signal to determine the location of the Target Cellular Device on **Sprint's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).